## IN THE UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| PENN-STAR INSURANCE COMPANY, | ) |
| Plaintiff, | ) ) ) |
| v. | ) ) |
| MIDWEST WAREHOUSING SYSTEMS, INC. and ISMAEL YANEZ, | ) No. 1:16-cv-3376 ) ) |
| Defendants. | ) ) |

## COMPLAINT FOR DECLARATORY JUDGMENT

Penn-Star Insurance Company ("Penn-Star"), for its Complaint for Declaratory Judgment against Defendants Midwest Warehousing Systems, Inc. ("Midwest") and Ismael Yanez ("Yanez"), states as follows:

## NATURE OF ACTION

1. This is an action for declaratory relief, brought pursuant to 28 U.S.C. §§ 2201 and 2202, wherein Penn-Star seeks a declaration regarding its rights, duties, and obligations under commercial general liability insurance it issued to Midwest with respect to the lawsuit, *Ismael Yanez v. Midwest Warehousing Systems, Inc.*, Case No. 2014 L 004393, currently pending in the Circuit Court of Cook County, Illinois – Law Division (the "Underlying Lawsuit").

2. This action seeks to resolve an actual controversy among and between the parties regarding insurance coverage for the Underlying Lawsuit under the subject policy, which is described below.

## THE PARTIES

3. Penn-Star is a Pennsylvania corporation with its principal place of business in Bala Cynwyd, Pennsylvania. Penn-Star is a citizen of the state of Pennsylvania.

4. Midwest is an Illinois corporation with its principle place of business in Des Plaines, Illinois. Midwest is a citizen of the state of Illinois

5. Yanez is domiciled in the state of Illinois. Yanez is a citizen of the state of Illinois.

**JURISDICTION AND VENUE**

6. Jurisdiction is proper in this Court, pursuant to 28 U.S.C. § 1332(a)(1), because the Plaintiff and Defendants are citizens of different states and the amount in controversy exceeds $75,000, exclusive of interest and costs.

7. Venue is proper in this District, pursuant to 28 U.S.C. § 1391(b)(1) because Defendants are residents of Illinois and § 1391(b)(2) because a substantial part of the events and omissions giving rise to the claim for which coverage is in dispute occurred in this District.

8. An actual justiciable controversy exists between and among the parties that can be determined by an order of this Court. Pursuant to 28 U.S.C. §§ 2201 and 2202, this Court has the power to declare and adjudicate the rights and liabilities of the parties under the policy of insurance at issue, and to give such other and further relief as may be necessary to enforce the same.

**FACTUAL BACKGROUND**

**The Underlying Lawsuit**

9. On April 18, 2014, Yanez filed the Complaint in the Underlying Lawsuit (the "Underlying Complaint") in the Circuit Court of Cook County, Illinois – Law Division against Midwest. A copy of the Underlying Complaint is attached hereto as Exhibit A.

10. The Underlying Lawsuit arises from alleged injuries sustained on July 18, 2007 by Yanez when he allegedly fell while performing work for Midwest involving erecting a steel

shelving structure at the premises located at 1835 Ferry Road, Naperville, Illinois (the "Site"). (*See* Ex. A.)

11. The Underlying Complaint alleges that, on or before July 18, 2007, Midwest was in charge of the erection and construction of a steel shelving system at the Site ("the Project"). (Ex. A, Count I ¶1; Count II ¶1.)

12. The Underlying Complaint alleges that Yanez was employed by Interactive Project Solutions ("IPS"), but was performing work for Midwest on the Project. (*See* Ex. A, Count I ¶2; Count II ¶2.)

13. The complaint alleges that Yanez was injured when he fell while performing this work. (Ex. A, Count I ¶7.)

14. In the Underlying Complaint, Yanez assets two counts of negligence against Midwest. (*See* Ex. A.)

15. Count I of the Underlying Complaint alleges that, although Yanez and/or IPS was an independent contractor, Midwest retained control of the work and is liable for Yanez's injuries due to various negligent acts or omissions, including failing to conduct reasonable inspections and failing to properly and safely control the work on the Project. (*See* Ex. A, Count I.)

16. Count II of the Underlying Complaint alleges that Midwest is liable for Yanez's injuries because it knew or should have known that the shelving structure involved in the Project presented an unreasonable risk of harm, required Yanez to work on the shelving structure, and Midwest failed to conduct reasonable inspections and failed to properly and safely control the work on the Project. (*See* Ex. A, Count II.)

17. Yanez alleges that, as a result of the Midwest's alleged negligence, he sustained injuries of a personal, permanent, and pecuniary nature. (Ex. A, Count I ¶9; Count II ¶12.)

18. In Count I and Count II, Yanez seeks sums in excess of $50,000.00 as damages. (Ex. A, Count I Prayer for Relief; Count II Prayer for Relief.)

**The Default Judgment and Midwest's Failure to Notify Penn-Star**

19. On February 11, 2016, a default judgment in the amount of $3,000,000 was entered in favor of Yanez against Midwest in the Underlying Lawsuit.

20. Penn-Star first learned of the Underlying Lawsuit when it received a letter dated February 16, 2016 from Yanez's counsel in the Underlying Lawsuit advising Penn-Star of the default judgment entered against Midwest.

21. In his February 16, 2016 letter, Yanez's counsel also requested that Penn-Star pay its policy limit to Yanez based on the default judgment entered against Midwest.

22. According to the Cook County Sherriff's Civil Process Service Lookup system, "Midwest Wearhousing" was served with process in the Underlying Lawsuit on April 23, 2014. A copy of the search results from referencing the Underlying Lawsuit in the Cook County Sherriff's Civil Process Service Lookup system is attached as Exhibit B.

23. Midwest knew of Underlying Lawsuit and received copies of the Underlying Complaint and summons in the Underlying Lawsuit on or about April 23, 2014.

24. Midwest did not notify Penn-Star of the Underlying Lawsuit.

25. Midwest did not send Penn-Star copies of demands, notices, summonses, or legal papers it received in the Underlying Lawsuit.

**The Predecessor Lawsuit**

26. On January 12, 2009, Yanez filed the lawsuit *Ismael Yanez v. Midwest Warehousing Systems, Inc.*, et al., Case No. 2009 L 000309, in the Circuit Court of Cook County, Illinois – Law Division (the "Predecessor Lawsuit").

27. In the Predecessor Lawsuit, Yanez sought damages from Midwest and other defendants for alleged injuries arising from the same incident at issue in the Underlying Lawsuit.

28. The allegations against Midwest in the Predecessor Lawsuit are virtually identical to the allegations against Midwest in the Underlying Lawsuit. (*Compare* Ex. A *with* Yanez's Third Amended Complaint in the Predecessor Lawsuit, attached hereto as Exhibit C, at Counts I and II.)

29. The claims in the Predecessor Lawsuit against Midwest were dismissed for want of prosecution on May 22, 2013.

30. The claims in the Predecessor Lawsuit against the other defendants were resolved by settlement.

31. During the course of the Predecessor Lawsuit, Mark Pettit, a former Midwest owner, testified that Midwest subcontracted with IPS for labor on the Project. (Pettit Deposition, attached hereto as Exhibit D, at 10:2-4; 17:10-19; and 23:13-15.)

32. During the course of the Predecessor Lawsuit, Yanez filed a response to a motion for summary judgment, a copy of which is attached hereto as Exhibit E.

33. In his response to the motion for summary judgment in the Predecessor Lawsuit Yanez stated: "MIDWEST WAREHOUSING SYSTEMS, INC. entered into a subcontract with Plaintiff's employer INTERACTIVE PROJECT SOLUTIONS, to provide labor for installation of the pick module." (Ex. E at 2.)

34. In his response to the motion for summary judgment in the Predecessor Lawsuit Yanez stated: "In July, 2007, Midwest contracted for labor with Interactive Project Solutions (IPS). Plaintiff, Ismael Yanez, worked for IPS at this time." (Ex. E at 4 (internal citations omitted).)

35. In his response to the motion for summary judgment in the Predecessor Lawsuit Yanez stated: "Midwest entered into a contractual relationship with Interactive Project Solutions (IPS) for labor on the project." (Ex. E at 5 (internal citations omitted).)

## **THE PENN-STAR POLICY**

36. Penn-Star issued to Midwest Commercial Lines Policy No. PAC6670631, effective April 6, 2007 to April 6, 2008 (the "Penn-Star Policy"), providing commercial general liability coverage. A certified copy of the Policy is attached hereto as Exhibit F.

37. The Penn-Star Policy provides, in relevant part, as follows:

**EXCLUSION – INJURY TO INDEPENDENT CONTRACTORS**

\* \* \*

The following exclusion is added to Paragraph 2., Exclusions of Section I – Coverage A – Bodily Injury and Property Damage Liability, Paragraph 2., Exclusions of Section I – Coverage B – Personal and Advertising Injury Liability and Exclusions of Section I – Coverage C – Medical Payments:

This insurance does not apply to "bodily injury", "personal and advertising injury" or "medical payments" to any independent contractor, subcontractor, casual laborer or volunteer worker, or to any employee of any independent contractor or subcontractor, while performing any work for you.

(Ex. F at 47.)

38. The Penn-Star Policy also provides, in relevant part, as follows:

**SECTION IV – COMMERCIAL GENERAL LIABILITY CONDITIONS**

\* \* \*

**2. Duties In The Event Of Occurrence, Offense, Claim Or Suit**

    **b.** If a claim is made or "suit" is brought against any insured, you must:

\* \* \*

        **(2)** Notify us as soon as practicable.

\* \* \*

You must see to it that we receive written notice of the claim or "suit" as soon as practicable.

    **c.** You and any other involved insured must:

        **(1)** Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or "suit"; and

\* \* \*

(Ex. F at 26.)

## COUNT I – Application of the Injury To Independent Contractor Exclusion

39. Penn-Star repeats and realleges the allegations of Paragraphs 1 through 38 as if fully set forth herein.

40. The Penn-Star Policy contains an endorsement titled "Exclusion – Injury to Independent Contractors," which adds an exclusion to the Penn-Star Policy providing that:

> This insurance does not apply to "bodily injury", "personal and advertising injury" or "medical payments" to any independent contractor, subcontractor, casual laborer or volunteer worker, or to any employee of any independent contractor or subcontractor, while performing any work for you.

41. On or before July 18, 2007, Midwest contracted with IPS to work at the Project for Midwest.

7

42. On July 18, 2007, Yanez was employed by IPS.

43. On July 18, 2007, IPS, though its employees, including Yanez, was an independent contractor or subcontractor performing work at the Project for Midwest.

44. Therefore, Penn-Star owes no duty to defend or indemnify Midwest, or to pay Yanez on behalf of Midwest, with respect to the Underlying Lawsuit because of the application of the Injury To Independent Contractors Exclusion.

### COUNT II – Breach of Duties In The Event of Occurrence, Offense, Claim, Or Suit Condition

45. Penn-Star repeats and realleges the allegations of Paragraphs 1 through 44 as if fully set forth herein.

46. Pursuant to the Duties In The Event of Occurrence, Offense, Claim, Or Suit Condition of the Penn-Star Policy, the Penn-Star Policy provides that "[i]f . . . 'suit' is brought against any insured, you must: . . . (2) [n]otify us as soon as practicable" and "[y]ou must see to it that we receive written notice of the . . . 'suit' as soon as practicable."

47. Midwest did not notify Penn-Star, in writing, of the Underlying Lawsuit as soon as practicable and therefore breached the Duties In The Event of Occurrence, Offense, Claim, Or Suit Condition of the Penn-Star Policy.

48. Pursuant to the Duties In The Event of Occurrence, Offense, Claim, Or Suit Condition of the Penn-Star Policy, the Penn-Star Policy further provides that "[y]ou . . . must: (1) [i]mmediately send us copies of any demands, notices, summonses, or legal papers received in connection with the . . . 'suit'."

49. Midwest did not immediately send Penn-Star copies of any demand, notice, summons, or legal papers it received in the Underlying Lawsuit and therefore breached the Duties In The Event of Occurrence, Offense, Claim, Or Suit Condition of the Penn-Star Policy.

50. By breaching the Duties In The Event of Occurrence, Offense, Claim, Or Suit Condition of the Penn-Star Policy, Midwest has failed to satisfy a condition precedent and/or antecedent to the Penn-Star Policy, thereby voiding coverage.

51. Therefore, Penn-Star owes no duty to defend or indemnify Midwest, or to pay Yanez on behalf of Midwest, with respect to the Underlying Lawsuit because of the breaches of the Duties In The Event of Occurrence, Offense, Claim, Or Suit Condition of the Penn-Star Policy.

WHEREFORE, pursuant to 28 U.S.C. §§ 2201, 2202 Penn-Star requests a judgment in its favor against Midwest and Yanez, on Counts I and II of Penn-Star's Complaint for Declaratory Relief, including the following relief:

    a. A declaration that the Penn-Star Policy does not provide coverage for Midwest in connection with the Underlying Lawsuit;

    b. A declaration that Penn-Star has no duty under the Penn-Star Policy to defend Midwest in the Underlying Lawsuit;

    c. A declaration that Penn-Star has no duty under the Penn-Star Policy to indemnify Midwest in connection with the Underlying Lawsuit;

    d. A declaration that Penn-Star has no duty under the Penn-Star Policy to pay any person, including Yanez, for sums which Midwest may be legally obligated to pay such person as a result of the Underlying Lawsuit; and

    e. Any such other and further relief as this Court deems just and appropriate.

DATE: March 17, 2016                                        Respectfully submitted by,

  /s/Richard H. Nicolaides, Jr.

Richard H. Nicolaides, Jr.
Illinois State Bar No. 6207460
rnicolaides@nicolaidesllp.com
Christopher D. Blum
Illinois State Bar No. 6302424
cblum@nicolaidesllp.com
NICOLAIDES FINK THORPE
MICHAELIDES SULLIVAN LLP
10 South Wacker, Suite 2100
Chicago, IL 60606
Ph:   312-585-1400
Fax: 312-585-1401
*Attorneys for Penn-Star Insurance Company*